UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLY ANN LABONTE,

                      Plaintiff,

Case # 16-CV-581-FPG

v.

DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                      Defendant.

Kelly Ann Labonte ("Labonte" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On December 3, 2012, Labonte protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 139-40. She alleged that she had been disabled since June 11, 2010 due to fibromyalgia, chronic migraines, spondylolisthesis, anxiety, and dpression. Tr. 154. On June 25, 2014, Labonte and a vocational expert ("VE") appeared and testified at a hearing

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

before Administrative Law Judge David S. Lewandowski ("the ALJ"). Tr. 31-78. On January 20, 2015, the ALJ issued a decision finding that Labonte was not disabled within the meaning of the Act. Tr. 10-20. On May 20, 2016, the Appeals Council denied Labonte's request for review. Tr. 1-6. Thereafter, Labonte commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Labonte's claim for benefits under the process described above. At step one, the ALJ found that Labonte had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Labonte has the following severe impairments: fibromyalgia, headaches, degenerative joint disease of the hips, and lumbar degenerative changes. Tr. 12-13. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 14.

Next, the ALJ determined that Labonte retained the RFC to perform sedentary work[3] with additional limitations. Tr. 14-19. Specifically, the ALJ found that Labonte can sit for two hours and stand for 30 minutes at a time; can sit, stand, and walk up to four hours in an eight hour workday; needs three to four unscheduled breaks for five to ten minutes; can frequently lift less than 10 pounds, occasionally lift up to 10 pounds, and rarely lift up to 20 pounds; can occasionally flex, extend, and rotate her neck, and climb; and can rarely twist, stoop, and crouch. Tr. 14.

At step four, the ALJ found that this RFC prevents Labonte from performing her past relevant work as a substitute high school teacher. Tr. 19. At step five, the ALJ relied on the VE's testimony and found that Labonte can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 19-20. Specifically, the VE testified that Labonte could work as an information clerk, phone

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

solicitor, and order clerk. Tr. 20. Accordingly, the ALJ concluded that Labonte was not "disabled" under the Act. *Id.*

## II. Analysis

Labonte argues that remand is required because the ALJ afforded "significant weight" to the opinion of her treating chiropractor Paul Bluestein, D.C. ("Dr. Bluestein") but failed to adopt all of his recommended limitations into the RFC assessment or explain why certain limitations were rejected. ECF No. 9-1, at 16-21; ECF No. 11, at 1-4. Specifically, Labonte asserts that the ALJ improperly rejected Dr. Bluestein's opinion that (1) she would be absent from work about four days per month, and (2) she would frequently be off task during an eight hour workday. *Id.*

The SSA's regulations require the Commissioner to "evaluate every medical opinion it receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997) (citing 20 C.F.R. § 404.1527(c)), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. Aug. 9, 2006) (noting that chiropractors are considered "other sources" pursuant to the SSA's regulations and that their opinions "are important and should be evaluated on key issues such as impairment severity and functional effect"). The ALJ must consider the following factors when he or she weighs a medical opinion: (1) whether the source examined the claimant; (2) whether a treating source provided the opinion; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

In general, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y.

5

2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Accordingly, when an ALJ adopts only portions of a medical opinion he or she must explain why the remaining portions were rejected. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417 at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an [ALJ] must have a sound reason for weighting portions of the same-source opinions differently")).

### 1. Absences from Work

Labonte argues that the ALJ erred by rejecting Dr. Bluestein's opinion that she would be absent from work about four days each month. ECF No. 9-1, at 19-20; Tr. 545. The ALJ summarized Dr. Bluestein's opinion and afforded it "significant weight" because Dr. Bluestein "is a treating provider and takes into consideration [Labonte's] condition and treatment, except for his opinion that she would be absent more than four day[s] per month as that part of the opinion takes into consideration [Labonte]'s condition and treatment." Tr. 18 (citing Tr. 545). While the Court agrees with Labonte that this statement is confusing, it seems apparent that the ALJ intended to discount Dr. Bluestein's opinion as to absences because that part of his opinion did *not* consider Labonte's condition and treatment. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an

ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

The Court can further glean the rationale behind the ALJ's rejection of Dr. Bluestein's opinion as to absences based on a separate portion of the ALJ's decision. The ALJ specifically recognized Labonte's testimony that "she has good days and bad days" and that she "has about four bad days a week where she stays in the house and lies in bed." Tr. 18. Although these assertions would certainly make it difficult for Labonte to maintain appropriate work attendance, the ALJ cited to medical records indicating that her migraines were well-managed with pain medications and Botox treatments. Tr. 18 (citing Tr. 394-407, 433). It seems that the ALJ used this evidence to discount Labonte's statements and Dr. Bluestein's opinion that she would be absent from work several days each month. It was proper for the ALJ to do this, because he is entitled to discount a medical opinion that he finds inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4).

Based on the ALJ's discussion of Dr. Bluestein's opinion (although it seems to be misworded), acknowledgement of Labonte's statements, and citation to medical evidence, the Court can glean the rationale behind the ALJ's decision. It is apparent that the ALJ rejected the limitation that Labonte would be absent from work four times each month as unsupported and not entitled to deference or inclusion in the RFC assessment.

### 2. Frequently Off Task

Labonte also argues that the ALJ erred by rejecting—without any explanation whatsoever—Dr. Bluestein's opinion that she would frequently be off task. ECF no. 9-1, at 18-

19. Labonte asserts that this error is particularly harmful because VE testimony established that this limitation would render her unemployable. *Id.* The Court agrees.

Dr. Bluestein opined that Labonte's pain and other symptoms would frequently interfere with the attention and concentration needed to perform work tasks. Tr. 543. "Frequently" means 34 to 66% of an eight hour workday. *Id.* The ALJ did not mention this limitation when he summarized Dr. Bluestein's findings. Tr. 18. The ALJ then afforded "significant weight" to Dr. Bluestein's opinion except for the portion that opined that Labonte would be absent from work about four days per month. *Id.* Despite the fact that it seems like the ALJ credited Dr. Bluestein's entire opinion, except the portion regarding absences, the RFC assessment lacks any limitation relating to Labonte being off task during the workday. Tr. 14. The ALJ did not explain why this portion of Dr. Bluestein's opinion was unpersuasive, and the ALJ's reasoning on this issue is not apparent from any other part of his decision.

The ALJ's failure to explain why he rejected this portion of Dr. Bluestein's opinion is especially harmful because the VE specifically testified that if an individual was occasionally off task due to pain or other symptoms, with "occasionally" being defined as up to 33% of the time, then he or should would be unable to maintain employment. Tr. 75-76; *see Dioguardi*, 445 F. Supp. 2d at 298 (noting that the ALJ's "failure to reconcile the RFC assessment with medical source statements was error, and based upon the testimony given by the vocational expert, the failure was not harmless"). Dr. Bluestein opined that Labonte would be off task "frequently," or 34 to 66% of the time, which would likely preclude her ability to maintain employment. The ALJ erred when he rejected this opinion, which is very favorable to Labonte's claim for disability, without any explanation. Therefore, remand is required. *See Raymer*, 2015 WL 5032669, at *6 ("Remand is especially appropriate where, as here, the ALJ gave [the doctor]'s

opinion 'considerable weight,' but failed to provide an explanation for not incorporating into the RFC some of the limitations identified in that opinion—particularly those that would lead to a finding of disability."); *Searles v. Astrue*, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) (remanding where "the ALJ failed to explain why he ignored portions of an opinion for which he granted 'significant weight.'").

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 1, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court